**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 13-61624 - CV-ROSENBAUM/HUNT**

ZIV RAPAPPORT,

        Plaintiff,

v.

GREEN TREE SERVICING, LLC,

        Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant Green Tree Servicing, LLC's Motion to Dismiss Plaintiff's Complaint and Motion for Attorney's Fees [D.E. 5]. The Court has carefully reviewed Green Tree Servicing's Motion and all supporting and opposing filings and is otherwise duly advised in the premises. For the reasons set forth below, the Court now grants Defendant's Motion to Dismiss and denies Motion for Attorney's Fees. Plaintiff, however, shall have until November 5, 2013, to file an amended complaint, should he wish to do so.

### *I. Background*

This action arises out of a dispute over a derogatory item on Plaintiff Ziv Rapapport's credit report and Defendant Green Tree Servicing, LLC's alleged failure to conduct a reasonable investigation after having been notified of the disputed item. D.E. 1 at ¶¶ 8-9, 12. Rapapport sets forth a single claim: the alleged violation of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681, *et seq.*, has caused him to suffer damages for which he is entitled to recover. D.E. 1 at ¶¶ 13,

16.

In particular, the Complaint asserts that in July 2013, Rapapport obtained a credit report from a third-party credit bureau, Equifax.  *Id*. at ¶ 8.  In reviewing the report, Rapapport discovered a derogatory item.  *Id*.  Rapapport specifically contested the item and mailed a dispute letter dated July 9, 2013, to Equifax.  *Id*. at ¶¶ 9-10.

Equifax, in turn, apparently notified Green Tree of the dispute, as required by the FCRA.  *Id.* at ¶ 11.  The Complaint claims that, once notified, Green Tree failed to properly conduct a reasonable investigation and make the requested corrections to Plaintiff's credit profile, *see id.* at ¶ 12, although it does not assert when, if ever, Green Tree ever completed its statutorily required reinvestigation.  But Plaintiff did attach to his Response to Defendant's Motion to Dismiss a copy of a letter from Equifax dated July 17, 2003, in which Equifax provided the "results of [the] reinvestigation" of the derogatory item, based on Green Tree's response to it.  *See* D.E. 9-2 (noting that Equifax had "researched the credit account" and that additional questions about the item should be addressed to Green Tree).

In its Motion to Dismiss, Green Tree argues that this action is premature and that it could not have been commenced until the expiration of the thirty-day period found in 15 U.S.C. §§ 1681s-2(b)(2) and 1681i(a)(1), which is the time that Green Tree, as the furnisher of information to Equifax, had available to satisfy its statutory duties, including conducting a reinvestigation, from the time that Rapapport provided notice of the dispute.  D.E. 5 at 5.  Because Rapapport's letter advising of the dispute was dated July 9, 2013, Green Tree posits that it had until August 9, 2013, to comply with its obligations under the statute.  *Id*.  Rapapport, who instead filed this case fourteen days earlier — on July 26, 2013 — retorts that he was not required to wait until the expiration of the thirty-day

period, and he was entitled to institute an action as soon as he received notice that the investigation had been completed.  D.E. 9 at 3.

In response, Green Tree contends that Rapapport never alleged in his Complaint that the investigation of the dispute was complete and furthermore, that Rapapport improperly attached new exhibits to his Response that were not present with the original Complaint.  D.E. 14 at 1-2. According to Green Tree, Rapapport's attachment of exhibits in support of his opposition to the Motion to Dismiss is essentially an effort to amend his Complaint by circumventing the Federal Rules of Civil Procedure.  *Id.* at 2-3.  Therefore, Green Tree urges, Plaintiff's Complaint as initially submitted to the Court should be dismissed for failure to state a claim.  *Id.* at 2-3.

### *II. Discussion*

A. Standard on a Motion to Dismiss Under Rule 12(b)(6)

Under Rule 12(b)(6), Fed. R. Civ. P., an action should be dismissed if it fails to state a claim. A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court must limit its consideration to the pleadings and exhibits attached to the pleadings and, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). In this Circuit, however, a district court may consider a document outside of the Complaint where the document is central to the plaintiff's claim and its authenticity is not challenged. *Speaker v. U.S. Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citations omitted). The instant matter is such a case. Plaintiff attached to his Complaint Equifax's response to Plaintiff's letter seeking correction of a derogatory item. *See* D.E. 9-2. No party contests the authenticity of this document, and, because this case focuses on Defendants' response to Plaintiff's letter requesting correction of a derogatory item, the exhibit is central to Plaintiff's claim. Accordingly, the Court may and does consider it.

A court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570) (explaining that allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). A claim is facially plausible when the

plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## B. Claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

The Fair Credit Reporting Act "was enacted 'to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy and proper utilization of such information.'" *Chipka v. Bank of Am.*, 355 F. App'x 380, 382 (11th Cir. 2009) (quoting 15 U.S.C. § 1681(b)).  Under the FCRA, upon receiving notice of a dispute, furnishers of information must conduct an investigation regarding the disputed information.  15 U.S.C. § 1681s-2(b)(1); *Chipka*, 355 F. App'x at 383 ("the FCRA also imposes certain responsibilities on persons who furnish information to consumer reporting agencies").  Title 15, United States Code, Section 1681s-2(b)(2) requires a furnisher of information to complete all investigations and obligations imposed by § 1681s-2(b)(1) within the period prescribed by 15 U.S.C. § 1681i(a)(1), which is thirty days from the date that the credit bureau receives notice of the dispute. 15 U.S.C. § 1681i(a)(1).  Any person who fails to comply with these requirements may be subject to liability based on 15 U.S.C. §§ 1681n (willful noncompliance) and 1681o (negligent noncompliance).

The crux of the issue here centers on whether a consumer must wait until the expiration of the thirty-day period described in Sections 1681i(a)(1) and 1681s-2(b)(1) before commencing a private action.  In analyzing this issue, the Court begins with the statutory language governing the period available for reinvestigation.  If that language is clear, the inquiry ends with an examination of the language as well.  *See Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1239 (11th

Cir. 2000) ("We assume that Congress used the words in a statute as they are commonly and ordinarily understood, and if the statutory language is clear, no further inquiry is appropriate."). Only if the statutory language is ambiguous may the court consider other materials bearing on legislative purpose, including legislative history, to determine Congressional intent. *Id*.

As pertinent to the issue before this Court, Section 1681s-2(b)(1) explicitly lists the duties of a furnisher of information, and Section 1681s-2(b)(2) establishes a deadline for when the reinvestigation duties listed in Section 1681s-2(b)(1) must be completed.  It states,

> A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency *before the expiration of the period under section 1681i(a)(1) of this title* within which the consumer reporting agency is required to complete actions required by that section regarding that information.

15 U.S.C. § 1681s-2(b)(2) (emphasis added).  Section 1681i(a)(1)(A), in turn, provides, in relevant part,

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . , *before the end of the 30-day period* beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

The statutory language of Sections 1681s-2(b)(2) and 1681i(a)(1)(A) clearly provides for a deadline by which a furnisher of information must complete its reinvestigation duties: thirty days from a consumer reporting agency's receipt of notice of the dispute.  Indeed, Section 1681s-2(b)(2)

is titled "Deadline."  A deadline is a "time limit . . . ."  *The American Heritage Dictionary of the English Language* 466 (4th ed. 2000).  A "limit," in turn, is "[t]he point, edge, or line beyond which something cannot or may not proceed, . . . [a] confining or restricting object, agent, or influence. . . ."  *The American Heritage Dictionary of the English Language* 1014 (4th ed. 2000).  In other words, under Sections 1681s-2(b)(2) and 1681i(a)(1)(A), the most time that an information furnisher may take to finish its reinvestigation duties is thirty days.  But nothing in the language requires an information furnisher to use all thirty days.

And nothing in the language imposes any corresponding obligations on consumers.  Of course, as a practical matter, if a furnisher of information elects to use all thirty days to complete its reinvestigation duties, a consumer may not file a claim in court until the thirtieth day has expired, or else the thirty-day period provided under the statute would be meaningless.  On the other hand, if an information furnisher does finish its reinvestigation duties in less time than thirty days and so notifies the consumer, nothing in the statutory language requires the consumer to wait until the end of the thirty-day period to file suit.  Moreover, under such circumstances, because the information furnisher would have finished all duties contemplated under the statute to be completed within the thirty-day period, no purpose would be served by requiring a consumer to wait to file a complaint until the remaining part of the thirty-day period had expired.  Thus, the statutory language itself does not require a consumer to wait for thirty days to file a claim where the furnisher of the information has earlier notified the consumer that it has completed all reinvestigation duties under the FCRA.

Because the statutory language is not ambiguous, the Court need not proceed further.  Nevertheless, the Court notes that the legislative purpose and history of the FCRA also support the contention that a consumer need not wait until the end of the thirty-day period before bringing a

claim if the information furnisher earlier notifies the consumer that it has completed its reinvestigation duties.  As previously noted, the purpose of the FCRA is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . *in a manner which is fair and equitable to the consumer*."  15 U.S.C. § 1681(b) (emphasis added).  The legislative history of the Act and its amendments also reveals that the FCRA is consumer-minded, enacted with the intent to protect the accuracy of consumer credit information and to expedite resolution of credit-related disputes. *See* H.R. Rep. 108-396, at 1 (2003) (Conf. Rep.) (amending the FCRA to "improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information"); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 22 (2001) ("Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy."); *Yang v. Government Employees Ins. Co.*, 146 F.3d 1320, 1322 (11th Cir. 1998) ("The FCRA seeks to promote the credit reporting industry's responsible dissemination of accurate and relevant information.").  Requiring consumers to wait to bring their claims even after all investigations have concluded and nothing more remains to be done conflicts with the legislative purpose of the FCRA to serve, in significant part, as a consumer-protection tool.  In this regard, it unnecessarily delays improvement of the accuracy of consumer records and the efficient resolution of consumer disputes.

Nor is the Court persuaded by the authority on which Green Tree relies to argue that a consumer must wait for the expiration of the thirty-day period before bringing suit, regardless of whether the information furnisher informs the consumer that it has completed its reinvestigation duties.  Defendant Green Tree relies principally on an unpublished decision from the Fourth Circuit.  In *Mavilla v. Absolute Collection Serv., Inc.*, the court held that "the statute precisely requires that

-8-

the 30 day period for investigation have expired for [the furnisher] to have breached any duty which would give rise to the [appellant's] private right of action." *Mavilla*, No. 13-1170, ___ F. App'x ___, 2013 WL 4799313 at *6 (4th Cir. 2013).   This Court respectfully disagrees with that conclusion.

In holding that the entire thirty-day period must expire before a consumer may ever file a claim under these provisions of the FCRA, the Fourth Circuit conducted no analysis of the issue but instead cited only the district court's opinion in the same case. *See id.* at *5.  The district court, in turn, relied exclusively on *Sweitzer v. Am. Express Centurion Bank*, 554 F. Supp. 2d 788, 795 (S.D. Ohio 2008), without engaging in its own analysis of the issue. *See Mavilla v. Absolute Collection Serv., Inc.*, 2013 WL 140046 at *8 (E.D.N.C. Jan. 10, 2013).

But *Sweitzer* did not hold that a consumer's right of action can never accrue until after the thirty-day period expires.  Rather, *Sweitzer* involved a statute-of-limitations issue in which the court had to determine whether the two-year statute of limitations on an FCRA claim ran.  In *Sweitzer*, the court noted that the statute of limitations begins to run on the date on which liability under the FCRA arises.  In determining when that was, the court in *Sweitzer* stated, "[G]enerally, liability for a 15 U.S.C. § 1681s-2(b) violation arises 30 days after the furnisher of information does not comply with its obligations outlined in § 1681s2(b)(1)(A)-(D)." *Id.* at 795.  Besides the fact that *Sweitzer* does not purport to analyze whether liability under the statute can arise earlier than the end of the statutory thirty-day period, two observations about this statement are noteworthy: first, the statement is qualified with the word "generally," suggesting that liability may attach earlier in a particular situation, and second, other than a citation to the statutory provisions themselves, the *Sweitzer* Court supports this determination is solely by citation to *Briley v. Burns Int. SAFETOHIRE.COM, Inc.*, 78

F. App'x 481, 484 (6th Cir. 2003).

Like *Sweitzer*, *Briley* also involved a statute-of-limitations issue.  The defendant claimed that the plaintiff had filed her claim beyond the statutory period.  In analyzing the issue, the court considered when the defendant's liability arose and explained, "It is from [the] alleged failure to follow the procedures outlined in § 1681i(a) that [defendant's] liability would arise." *Briley*, 78 F. App'x at 485 (quoting *Williams v. Colonial Bank*, 826 F. Supp. 415 (M.D. Ala. 1993)) (modifications made by the *Briley* Court) (internal quotation marks omitted).  Thus, the court reasoned, "[T]he date upon which liability arose was *at the latest* March 25, 1998, thirty days after the latest date reflected by the record for when [the plaintiff] contacted [the defendant] about the error." *Id*. (emphasis added).  In other words, the plaintiff's claim could have arisen before the end of the thirty-day period if the defendant had completed its reinvestigation but had failed to comply satisfactorily with the requirements of the FCRA in doing so.

At bottom, then, the authority on which *Mavilla* relies to hold that a consumer must wait for the thirty-day period to expire before that consumer may file an FCRA claim does not, in fact, appear to stand for that proposition.  Therefore, this Court respectfully declines to follow *Mavilla*.  Instead, the Court concludes that, in view of the plain language of the statutory provisions at issue and in light of congressional purpose in enacting the consumer protections embodied in the FCRA, a consumer's cause of action accrues either at the expiration of the thirty-day period or upon notification of the consumer by the furnisher of information — directly or indirectly through the credit bureau — that the reinvestigation duties have been completed, whichever occurs first.

Although the Court disagrees with Green Tree that Rapapport necessarily filed his claim prematurely merely because he filed it before thirty days elapsed from the time that he notified

-10-

Equifax of his complaint regarding the derogatory item, the Court nonetheless agrees with Green Tree that the Complaint in this case currently fails to state a valid claim. On its face, the Complaint neither demonstrates that Rapaport waited for the thirty-day period to expire nor alleges that Green Tree advised Rapaport that it had completed its reinvestigation. As a result, the Complaint contains no allegations demonstrating that Plaintiff's claim under the FCRA has accrued. The Court therefore grants Defendant Green Tree's Motion to Dismiss but provides Plaintiff Rapaport leave to amend his Complaint by November 5, 2013.

C. Attorney's Fees

Defendant Green Tree also moves the Court to award attorney's fees under 15 U.S.C. § 1681n(c), which provides,

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

If a court finds that an action was filed in bad faith or for purposes of harassment, an award of attorney's fees is proper. *See Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.")). On this record, however, no evidence exists that Rapaport filed his action in bad faith. To the contrary, based on Rapaport's attachments to his Response to Green Tree's Motion to Dismiss, it appears that Rapaport may be able to state a viable claim under the FCRA. Therefore, Defendant Green Tree's Motion for Attorney's Fees is denied.

### *III. Conclusion*

For the foregoing reasons, Defendant Green Tree Servicing, LLC's Motion to Dismiss [D.E.

5] is **GRANTED** and Motion for Attorney's Fees is **DENIED**.  Plaintiff shall have until November

5, 2013, to file an Amended Complaint, should he wish to do so.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 22nd day of October 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

-12-